UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| AMANDA RHODES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CAUSE NO. 1:24-cv-00401-ALT |
| | ) |
| COMMISSIONER OF SOCIAL SECURITY, | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

Plaintiff Amanda Rhodes appeals to the district court from a final decision of the Commissioner of Social Security ("Commissioner") denying her application under the Social Security Act (the "Act") for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). (ECF 1). Because at least one of Rhodes's two arguments in this appeal are persuasive, the Commissioner's decision will be REVERSED and the case REMANDED for further proceedings.

**I. FACTUAL AND PROCEDURAL HISTORY**

Rhodes applied for DIB and SSI in July 2022, alleging disability as of February 1, 2022. (ECF 10 Administrative Record ("AR") 16, 276-91).[1] Rhodes's claim was denied initially and upon reconsideration. (AR 16, 155-173, 186-200). On November 28, 2023, administrative law judge ("ALJ") Meredith Jacques conducted an administrative hearing, at which Rhodes, who was represented by counsel, and a vocational expert ("VE") testified. (AR 76-105). On January 30, 2024, the ALJ rendered an unfavorable decision to Rhodes, concluding that she was not disabled

---
[1] The AR page numbers cited herein correspond to the ECF-generated page numbers displayed at the top center of the screen when the AR (both ECF 10 and ECF 10-1) is open in ECF, rather than the page numbers printed in the lower right corner of each page.

because she could perform a significant number of unskilled, sedentary jobs in the national economy despite the limitations caused by her impairments. (AR 16-35). The Appeals Council denied Rhodes's request for review (AR 7-11), and the ALJ's decision became the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 416.1481.

On September 20, 2024, Rhodes filed a complaint in this Court appealing the Commissioner's final decision. (ECF 1). Rhodes advances two arguments in this appeal, both pertaining to her mental health: (1) that the ALJ failed to properly evaluate the mental status examination of Dr. Leslie Predina; and (2) that the ALJ failed to adequately account for Rhodes's moderate limitations in concentration, persistence, and pace when assigning the mental residual functional capacity ("RFC"). (ECF 11 at 1, 10-20). Rhodes does not challenge the ALJ's consideration of her physical impairments and the assigned physical RFC. (*See id.* at 1).

On the date of the Commissioner's final decision, Rhodes was thirty-six years old (AR 302); had obtained her GED (AR 23, 307); and had past relevant work as a hand driller, housekeeper, and retail cashier (AR 33, 308). In her application, Rhodes alleged that she is disabled due to the following conditions: blind or low vision, degenerative disc disease, narrowing of the spinal canal, hypertension, sleep apnea, peripheral neuropathy, asthma, neck and low back arthritis, and bilateral carpel tunnel syndrome. (AR 306; *see also* AR 341 (adding bipolar 2 disorder and anxiety)).

## II. STANDARD OF REVIEW

Section 405(g) of the Act grants this Court the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner . . . , with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The Court's task is limited to determining whether the ALJ's factual findings are supported by

2

substantial evidence, which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (citation omitted). The decision will be reversed "only if [it is] not supported by substantial evidence or if the Commissioner applied an erroneous legal standard." *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000) (citation omitted).

To determine if substantial evidence exists, the Court "review[s] the entire administrative record, but do[es] not reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute [its] own judgment for that of the Commissioner." *Id.* (collecting cases). "Rather, if the findings of the Commissioner . . . are supported by substantial evidence, they are conclusive." *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003) (citation omitted). "In other words, so long as, in light of all the evidence, reasonable minds could differ concerning whether [the claimant] is disabled, we must affirm the ALJ's decision denying benefits." *Books v. Chater*, 91 F.3d 972, 978 (7th Cir. 1996).

### III. ANALYSIS

*A. The Law*

Under the Act, a claimant seeking DIB or SSI must establish that she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); *see also id.* §§ 416(i)(1), 423(d)(1)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* §§ 423(d)(3), 1382c(a)(3)(D).

The Commissioner evaluates disability claims pursuant to a five-step evaluation process, requiring the ALJ to consider sequentially whether:

> (1) the claimant is presently employed [in substantial gainful activity]; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) the claimant's [RFC] leaves [her] unable to perform [her] past relevant work; and (5) the claimant is unable to perform any other work existing in significant numbers in the national economy.

*Pufahl v. Bisignano*, 142 F.4th 446, 452-53 (7th Cir. 2025) (citation omitted); *see also Sevec v. Kijakazi*, 59 F.4th 293, 298 (7th Cir. 2023); 20 C.F.R. §§ 404.1520, 416.920. "Between the third and fourth steps, the ALJ determines the claimant's [RFC], which is the claimant' maximum work capability." *Pufahl*, 142 F.4th at 453 (citations omitted); *see also* 20 C.F.R. §§ 404.1520(e), 404.1545(a), 416.920(e), 416.945(a). "The burden of proof is on the claimant for the first four steps." *Fetting v. Kijakazi*, 62 F.4th 332, 336 (7th Cir. 2023) (citation omitted). "At step five, the burden shifts to the [Commissioner] to show that there are significant numbers of jobs in the national economy for someone with the claimant's abilities and limitations." *Id.* (citation and internal quotation marks omitted). "If at any step a finding of disability or nondisability can be made, the Social Security Administration will not review the claim further." *Sevec*, 59 F.4th at 298 (citation and brackets omitted).

### B. The Commissioner's Final Decision

In the Commissioner's final decision, the ALJ found as a threshold matter that Rhodes was insured for DIB through March 31, 2025. (AR 18). At step one of the five-step sequential analysis, the ALJ determined that Rhodes had not engaged in substantial gainful activity after her alleged onset date of February 1, 2022. (*Id.*). At step two, the ALJ found that Rhodes had the following severe impairments: lumbar spondylosis and stenosis, degenerative disk disease of the cervical spine, peripheral neuropathy, bilateral carpal tunnel syndrome; obesity, anxiety,

4

depression, and post-traumatic stress disorder (PTSD). (AR 18-19). At step three, the ALJ concluded that Rhodes did not have an impairment or combination of impairments severe enough to meet or equal a listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR 19).

The ALJ assigned Rhodes the following RFC:

[T]he claimant has the [RFC] to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except as reduced by the following. The claimant can frequently handle, finger, and feel with the bilateral upper extremities; occasionally stoop, kneel, crouch, and crawl, and she can occasionally climb ramps and stairs and occasionally balance . . . , but the claimant can never climb ladders, ropes, or scaffolds. The claimant also needs to avoid concentrated exposure to extreme cold, wetness, and to workplace hazards, such as unprotected heights and unguarded moving mechanical parts. Mentally, the claimant can understand, remember, and carry out simple instructions, she can have frequent interactions with coworkers and supervisors, and she can have occasional interaction with the public.

(AR 22).

The ALJ determined at step four that given the foregoing RFC, Rhodes could not perform any of her past relevant work. (AR 33). However, at step five the ALJ found that a hypothetical individual of Rhodes's age, education, experience, and RFC could perform a significant number of unskilled, sedentary jobs in the national economy, including document preparer, electronic assembler, and touch up screener. (AR 34). Accordingly, Rhodes's applications for DIB and SSI were denied. (AR 35).

### C. Concentration, Persistence, or Pace

Rhodes argues that that the ALJ failed to adequately account for her moderate limitations in concentration, persistence, or pace when assigning the mental RFC. (ECF 11 at 16-20). As explained above, the ALJ limited Rhodes in the RFC to: "Mentally, the claimant can understand, remember, and carry out simple instructions, she can have frequent interactions with coworkers and supervisors, and she can have occasional interaction with the public." (AR 22).

The RFC is "the individual's *maximum* remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis," meaning eight hours a day, for five days a week. SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996) (bold emphasis omitted). That is, the "RFC is not the *least* an individual can do despite his or her limitations or restrictions, but the *most*." *Id.* at *1; *see also Young v. Barnhart*, 362 F.3d 995, 1000-01 (7th Cir. 2004); 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). "The ALJ need not use any 'magic words' in formulating a person's . . . RFC. But an 'RFC assessment must incorporate all of the claimant's limitations supported by the medical record, including even moderate limitations in concentration, persistence, or pace.'" *Lothridge v. Saul*, 984 F.3d 1227, 1233 (citation omitted).

More particular to the issue presented here, "[a]gain and again, [the Seventh Circuit Court of Appeals has] said that that when an ALJ finds there are documented limitations of concentration, persistence, and pace, the [RFC and corresponding] hypothetical question presented to the VE must account for these limitations." *Winsted v. Berryhill*, 923 F.3d 472, 476-77 (7th Cir. 2019) (collecting cases); *see also Martin v. Saul*, 950 F.3d 369, 373 (7th Cir. 2020) ("[T]he relative difficulty of a specific job assignment does not necessarily correlate with a claimant's ability to stay on task or perform at the speed required by a particular workplace." (citation omitted)). The Seventh Circuit has "made clear that in most cases employing terms like 'simple, repetitive tasks' on their own will not necessarily exclude from the VE's consideration those positions that present significant problems of concentration, persistence and pace, and thus, alone, are insufficient to present the claimant's limitations in this area." *Winsted*, 923 F.3d at 477 (citations and internal quotation marks omitted); *see Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019) ("[W]e have . . . underscored that the ALJ generally may not rely merely on catch-all terms like 'simple, repetitive tasks' because there is no basis to conclude that they account for

6

problems of concentration, persistence or pace. More to it, observing that a person can perform simple and repetitive tasks says nothing about whether the individual can do so on a sustained basis, including, for example, over the course of a standard eight-hour work shift." (citation and internal quotation marks omitted)).

The Seventh Circuit, however, has clarified that there is no "categorical rule to the effect that an ALJ may never accommodate 'moderate' limitations in concentration, persistence, and pace with only a restriction to simple instructions and tasks." *Lothridge*, 984 F.3d at 1234. For example, in *Pavlicek v. Saul*, which the Commissioner cites here, the Seventh Circuit noted that "[a] 'moderate limitation' is defined by regulation to mean that functioning in that area is 'fair.'" 994 F.3d 777, 783 (7th Cir. 2021) (citing 20 C.F.R. Pt. 404, Subpt. P, App. 1); (*see* ECF 17 at 10-11). From there, the Court reasoned: "'[F]air' in ordinary usage does not mean 'bad' or 'inadequate.' So a 'moderate' limitation in performing at a consistent pace seems consistent with the ability to perform simple, repetitive tasks at a consistent pace." *Pavlicek*, 994 F.3d at 783. But the Court's reasoning in *Pavlicek* was articulated when assessing whether the ALJ reasonably relied on a narrative RFC penned by the state agency doctors that the claimant could perform at a consistent pace if engaged in simple, repetitive tasks, in contrast to their "moderate" checklist ratings. *Id.* The Commissioner also cites a recent case from this district in which the district judge stated: "[C]learly, where the ALJ connects the assessed limitations to evidence supporting those limitations, even vague or generic restrictions to simple work is sufficient." *Johnson v. O'Malley*, No. 4:23-CV-39-GSL, 2024 WL 1327338, at *6 (N.D. Ind. Mar. 27, 2024). Ultimately, whether an ALJ has adequately accounted for moderate limitations in concentration, persistence, or pace must be assessed on a case-by-case basis.

Here, the "[RFC] formulation [assigned by the ALJ] . . . says nothing about whether

[Rhodes] is capable of performing work at a sustained pace over an entire workday." *Lothridge*, 984 F.3d at 1233. Consequently, the Court is left to ascertain from the rest of the ALJ's decision whether an RFC of "simple instructions" could reasonably account for Rhodes's moderate deficits in concentration, persistence, or pace. This matters because the VE testified at the hearing that an employer's "tolerance of off task" for employees performing unskilled work was "no more than ten percent of the workday" (AR 103), and the ALJ's decision did not address one way or another whether Rhodes could sustain unskilled tasks for ninety percent of an eight-hour workday. *See Lothridge*, 984 F.3d at 1233; *see Mischler v. Berryhill*, 766 F. App'x 369, 376 (7th Cir. 2019) ("A task can be simple, but a person with a poor attention span may still become distracted and stop working.").

In assigning the mental RFC, the ALJ heavily relied on Rhodes's daily living activities, stating:

> With regard to concentrating, persisting or maintaining pace and consistent with the ability to drive, go out alone, run errands, cook, shop, play cards/board games, engage in Bingo, watch TV, read, pay bills [and] handle checking/savings accounts, do good at following written/spoken instructions, pay attention for a while, sometimes finish what she starts, and provide the care inherent in raising small children including getting her oldest to school and providing care for her infant to one year old (currently two), while her spouse works, and with some reported help by others, the claimant has a moderate limitation as also further described below within testimony. Also reported was that the claimant does not do well with stress or change in routine.

(AR 21 (citations omitted)). The ALJ further reasoned later in her decision:

> [T]he claimant's reports note that while she has allegations for mental health issues, use of medication appears reasonably effective, as she is able to maintain a daily routine in caring for children and without household routines. The claimant retains the concentration, memory, understanding and persistence, pace and social functioning to engage in the aforementioned routine, as well as also drive, go out alone, shop, pay bills, read and generally concentrate/understand what is read, get along [with] others and many others are cited herein. The overall reports reflected earlier throughout the records do not reasonably suggest more than moderate limitation in functioning, as acknowledged an[d] accommodated herein.

8

(AR 30).[2]

      While an ALJ may consider a claimant's statements about her daily life activities, the Seventh Circuit has established a boundary line that an ALJ may not go so far as to "equate activities of daily living with those of a full-time job." *Jeske v. Saul*, 955 F.3d 583, 592 (7th Cir. 2020) (citation omitted). "The critical differences between activities of daily living and . . . a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons . . . , and is not held to a minimum standard of performance, as she would be by an employer." *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012) (collecting cases); *see also Punzio v. Astrue*, 630 F.3d 704, 712 (7th Cir. 2011) ("[An] ability to struggle through the activities of daily living does not mean that [the claimant] can manage the requirements of a modern workplace." (collecting cases)); *Mendez v. Barnhart*, 439 F.3d 360, 362 (7th Cir. 2006) ("We have cautioned the Social Security Administration against placing undue weight on a claimant's household activities in assessing the claimant's ability to hold a job outside the home. . . . The pressures, the nature of the work, flexibility in the use of time, and other aspects of the working environment . . . often differ dramatically between home and office or factory or other place of paid work." (internal citations omitted)). Here, the ALJ seems to have

---

[2] The record offers mixed support for the ALJ's conclusion that Rhodes's mental symptoms "improv[ed] with medications[.]" (AR 31). For example, at a January 2023 mental health visit, Rhodes reported that none of her anxiety medications were helpful, but then also stated that Celexa "takes the edge off." (AR 1096-97; *see also* AR 714 ("She thinks the Celexa ha[s] worked [as] good [as] anything lately."); AR 1083 ("She feels like the Lithium might be making her angry recently."); AR 1094 ("Consider stopping Celexa, but patient endorses OCD symptoms, and Celexa helps with that.")). While the ALJ noted Rhodes's report that her use of medication was not very helpful (AR 24), the ALJ heavily relied on Rhodes's daily activities to not fully credit those reports. (*See, e.g.*, AR 30 ("[T]he claimant's reports note that while she has allegations for mental health issues, use of medication appears reasonably effective, as she is able to maintain a daily routine in caring for children and without household routines.").

crossed that boundary line in its near-total reliance on Rhodes's daily activities when crafting the mental RFC in the context of Rhodes's moderate deficits in concentration, persistence, or pace.

Significantly, in contrast to *Pavlicek*, this is not a case where the ALJ relied on a medical source opinion that "translated" Rhodes's moderate limitations in concentration, persistence, or pace to an RFC for simple work. *Cf. Pavlicek,* 994 F.3d at 783 (finding that the ALJ reasonably relied on the doctor's narrative opinion that "adequately encapsulated and translated" the doctor's 'moderate' checklist ratings in an RFC for simple tasks (citation and brackets omitted)). While the mental status examination conducted by Dr. Paula Neuman in October 2022—opining that Rhodes's "ability to sustain her concentration and persistence appears to be intact" and "mental health conditions do not appear to be a limiting factor to her work" (AR 881)—might support the limited restrictions assigned in the RFC, the ALJ chose to discount Dr. Neuman's opinion, stating it was "not consistent with the claimant's longitudinal record that reflects some mental health issues and a need of treatment . . . ." (AR 31). In fact, the ALJ discounted *all* of the mental health opinions of record and did not rely on any particular medical source opinion when purportedly accounting for Rhodes's moderate limitations in concentration, persistence, or pace and crafting an RFC for "simple instructions[.]" (AR 22; *see* AR 30-31 (discounting Dr. Predina's opinion and the opinions of the state agency psychologists)).

Additionally, there is no indication that the ALJ's limitation to "simple instructions" accounted for the ALJ's observation that Rhodes "does not do well with stress or change in routine" (AR 21, 22; *see also* AR 30 (noting Dr. Predina's observation that Rhodes's concentration and memory were impaired "due to interference of anxiety" (citation omitted))), as the ALJ did not offer an explanatory connection between "simple instructions" and low stress or infrequent change. *See Winsted*, 923 F.3d at 477 ("[W]here a claimant's limitations are stress-

related, as [the claimant's] appear to be, the hypothetical question should account for the level of stress a claimant can handle." (citations omitted)); *cf. Johnson*, 2024 WL 1327338, at *6 (finding that the ALJ sufficiently connected the assigned RFC to evidence supporting those limitations). Nor is it reasonable to infer that the social limitations included in the mental RFC were intended to account for Rhodes's moderate problems with concentration, persistence, or pace, as "that restriction could just have likely been meant to account for [Rhodes's] moderate difficulty with social functioning . . . ." *Winsted*, 923 F.3d at 477; *see also Stewart v. Astrue*, 561 F.3d 679, 685 (7th Cir. 2009) (noting that a limitation to "simple, routine tasks that do not require constant interactions with coworkers or the general public" did not account for the claimant's limitations in concentration, persistence, or pace).

In sum, the RFC assigned by the ALJ, and the corresponding hypothetical questions posed by the ALJ to the VE, were "incomplete because [they] did not include any restrictions in concentration, persistence, or pace ¦ restrictions that the ALJ acknowledged [Rhodes] to have suffered moderately." *Radosevich v. Berryhill*, 759 F. App'x 492, 494 (7th Cir. 2019). "[A]though [Rhodes] may have the mental capacity to complete a single, simple task, the [RFC and] hypothetical[s] did not capture the limitation in her ability to execute that simple task over an extended time." *Id.* Because of this "disconnect[,]" *id.*, between Rhodes's moderate limitations in concentration, persistence, or pace found by the ALJ and the assigned RFC for "simple instructions" (AR 22), the ALJ's decision will be reversed and the case remanded to reassess the mental RFC and the hypotheticals posed to the VE at step five.[3]

## IV. CONCLUSION

For the foregoing reasons, the Commissioner's decision is REVERSED, and the case is

---

[3] Because the case will be remanded on this basis, the Court need not reach Rhodes's argument challenging the ALJ's consideration of Dr. Predina's opinion. (*See* ECF 11 at 11-14).

REMANDED to the Commissioner for further proceedings in accordance with this Opinion and Order. The Clerk is DIRECTED to enter a judgment in favor of Rhodes and against the Commissioner.

SO ORDERED.

Entered this 24th day of September 2025.

/s/ Andrew L. Teel
Andrew L. Teel
United States Magistrate Judge